ORIGINAL

FILED

JUN - 6 2014

U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Seaside Farm, Inc.

v.

The United States

No. 14 - 489 C

## COMPLAINT

The Plaintiff, by and through its undersigned attorneys, would respectfully allege as follows:

1.      The Plaintiff, Seaside Farm ("Seaside"), is a family farming operation located on St. Helena Island in Beaufort County, South Carolina.

2.      The Defendant is the United States of America.

3.      The acts and omissions which form the basis of the Plaintiff's Complaint were made by administrative subdivisions of the defendant, primarily the U.S. Food and Drug Administration ("FDA").

4.      The claims herein are brought against the United States pursuant to 28 U.S.C. 1491 as well as the Federal Tort Claims Act (28 U.S.C. § 2671 *et seq*.) and §§ 1346(b)(1) for money damages as compensation for loss of property and injuries that were caused by the negligent and wrongful acts and omissions of employees of the United States government while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the laws of South Carolina.

1

5.      Venue is proper in that 28 U.S.C. 1491 provides jurisdiction and venue is proper in this Court.

6.      Plaintiffs have complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act.

7.      This suit is timely filed.

8.      The FDA is in charge of the oversight and regulation governing distribution of fruits and vegetables, including tomatoes, in the United States.

9.      Seaside grows tomatoes on its family farm and distributes its tomatoes all over the country but primarily in eastern seaboard states.

10.     Seaside engages in business practices which promote food cleanliness and healthy sanitation to ensure the food safety of its tomatoes.

11.     Seaside has purchased at great expense and uses equipment which enhances cleanliness and sanitation and further ensures food safety of Seaside tomatoes.

12.     The FDA is aware of Seaside's safe business practices and Seaside's significant investment in equipment to protect its tomatoes from food borne illness contamination including salmonella.

13.     The FDA has done laboratory testing and is aware that salmonella does not contaminate the fruit itself, rather a tomato can only become contaminated when some other contaminated item comes into contact with a tomato.

14.     In the spring of 2008, Seaside assisted and cooperated with customers to allow during-harvest inspection of its tomato fields and tomato processing and packing facility.

15.     The purpose of the inspection was to ensure the food safety of the tomatoes which were being grown and packed by Seaside.

16.     Seaside paid for, cooperated with, and assisted full inspection of its operation by two independent examiners who audited all aspects of food safety at separate times during the spring and early summer of 2008.

17.     Seaside passed all inspections and its produce and practices were deemed safe.

18.     In June of 2008, at the precise time when South Carolina tomatoes are coming to market, the FDA announced a national recall of all tomatoes in the U.S.

19.     The alleged basis for this recall was reported incidents of citizens becoming ill due to a particular strain of salmonella.

20.     The FDA improperly assumed that the salmonella was being transmitted by contaminated tomatoes.

21.     The FDA reported to the public that all tomatoes, nationwide, were suspect and the public should cease consumption of any round tomatoes due to salmonella contamination.

22.     The total recall was announced on television, radio and all other types of mass media.

23.     At the time of the recall, the FDA had not positively identified a single tomato as a current source of the salmonella outbreak in the United States.

24.     The FDA never identified any contaminated tomatoes and ultimately conceded that tomatoes were not the source of the salmonella contamination.  The salmonella contamination was the whole basis for the tomato recall.

25.     Due to the timing of the announcement, the FDA total recall most affected South Carolina tomato farmers who were poised to have a stellar year due to crop yield and market price.

26.     The total recall announcement decimated the market price for fresh tomatoes.

27.     Prior to the recall, Seaside had arranged for its tomatoes to be purchased at market price and had purchase commitments from buyers.

28.     After the recall announcement, which occurred just as the South Carolina tomatoes were coming to market, the market price immediately fell from mid twenties per unit to single digits.

29.     Regardless of the flawed basis for the decision to make the announcement, once the decision was made, the FDA had a duty to carry out the recall in a consistent, reasonable, and fair manner.

30.     The total recall announcement contradicted itself in that at the time of the recall, the FDA knew that South Carolina tomatoes were not contaminated. In fact, the announcements claiming to be total recall announcements listed more states which had not been identified than it did tomato producing states which had been identified. Despite this, the FDA continued to lead its announcement with the pronouncement that the contamination was nationwide.

31.     After announcing to the country there was a nationwide recall, the FDA website maintained a specific list of approved tomato providers who admittedly did not have contaminated tomatoes.

32.     Seaside Farm was not placed on the approved list even though it has always cooperated with the FDA and had paid for two independent audits of its practices prior to the recall.

33.    Because of the contradictory and inconsistent positions of the FDA after the recall announcement, Seaside could not adequately assure its buyers that its tomatoes were unaffected by the alleged contamination.

34.    No South Carolina tomato was ever found to be contaminated with salmonella saintpaul in 2008.

35.    After six weeks of constant media releases which were incomplete and misleading, on July17, 2008 the FDA announced that it was safe to eat tomatoes again as if there was ever a time that it was not safe.

36.    The actions of the FDA constitute a regulatory taking for which just compensation is due.

37.    Seaside filed its timely administrative claim for its losses attributable to the inconsistent and unreasonable manner in which the FDA executed its duties following the recall announcement and for the reckless and admittedly baseless announcement.

38.    On December 16, 2010, Seaside received a letter denying its administrative claim and informing Seaside that if it disagreed with the FDA's denial, Seaside could file suit in the appropriate federal district court.

39.    The Federal Tort Claims Act applies to the FDA and states "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C.A. § 2674.

40.    On May 18, 2011, Seaside Farm filed an action in negligence and requesting compensation through a takings claim in the District Of South Carolina.

41.  On March 6, 2012, the District Court ruled that as for the Plaintiff's taking claim, this Court was the exclusive venue and dismissed the claim.

42.  The Plaintiff now brings this action in this Court to preserve its alternative form of relief of a valid claim for regulatory taking claim in the event that the District Court in South Carolina determines that relief cannot be afforded through Seaside's negligence claim which is still pending.  The Plaintiff seeks this relief for a regulatory taking not as an attempt to procure double recovery but in the proper effort to preserve all known avenues of relief until the Plaintiffs are compensated.

### FOR A FIRST CAUSE OF ACTION
### Violation of the Takings Clause

43.  The Plaintiff repeats and realleges all paragraphs as if specifically restated herein.

44.  The Plaintiff had valuable private property in the form of a tomato crop at its farm on St. Helena's Island, South Carolina.

45.  The Defendant, to the extent that its actions were even valid, took action for the benefit of the public which trampled the private property rights of Seaside.

46.  The actions of the FDA constitute a taking of the property rights of Seaside in its 2008 tomato crop which deprived the Plaintiff of nearly the full value of its property.

47.  As a result, Seaside is entitled to full compensation for the property which was taken including interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant and that:

A.  Plaintiff recovers the value of the propery taken,  $15, 036,293.95 plus interest, the same being specifically stated in Seaside's previously filed administrative claim;

6

B.    Plaintiff recovers interest on the amount taken by the Defendant's

actions from the date of the taking;

C.    The Court grants such other, further, or different relief as may be

deemed just and proper.

BY: _____

Jonathan Cuneo, Esq.
Charles J. LaDuca, Esq.
CUNEO GILBERT & LADUCA, LLP
507 C Street NE
Washington, DC 2002
Phone: 202-789-3960
Fax:    202-789-1813
Email: jonc@cuneolaw.com
        charles@cuneolaw.com


Attorneys for Plaintiffs


Dated: June 6, 2014
Washington, DC